THE STATE OF FLORIDA, *Appellant*, v. COUNTY OF GADSDEN, *Appellee.*

1. The State has a right to appeal from a decree denying and dismissing a petition to have county bonds validated in the proceedings authorized by Chapter 5698, Acts of 1907.

2. While statutes may be impliedly as well as expressly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent.

3. An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable

repugnancy between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute.

4.  If two statutes may operate upon the same subject without positive inconsistency or repugnancy in their practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears.

5.  Chapter 5698, Acts of 1907, relating to an annual tax levy by the counties for the purpose of erecting a court house, does not by implication repeal Sections 769, 786, 787 and 798 of the General Statutes which relate to the issue of county bonds for the purpose of erecting court houses.

Appealed from the Circuit Court for Gadsden County.

The facts in the case are stated in the opinion of the court.

*Park Trammell,* Attorney General, and *C. O. Andrews,* for Appellant;

*E. C. Love,* for Appellee.

WHITFIELD, C. J.—Under the authority conferred by Chapter 6237, Acts of 1911, the Attorney General filed in the name of the State in the Circuit Court for Gadsden County a petition setting forth that an election was held in Gadsden county, Florida, on May 16, 1911, under the laws of the State for the issuance of bonds for the purpose of erecting a court house in the county; that the election was in favor of the issue of bonds; that it is proposed to issue $60,000.00 of bonds to build a court house in said county, such bonds to be payable in twenty years from the date thereof and bear interest at the rate of 5%

per annum, payable annually, both principal and interest to be payable at Quincy, Florida; that the clerk of the board of county commissioners of said county has certified that said election was held and notice served to that effect upon the Attorney General, the State Attorney for the Circuit being absent on November 10, 1911; that said election resulted in a vote of 279 for and 126 against the bond issue; that said election is *prima facie* in favor of the issuance of said bonds for said purpose, and praying that an order do issue to the proper officers of Gadsden county directing them to show cause why the issuance of said bonds should not be confirmed and validated by the court as provided by Chapter 6237, Acts of 1911.

The county commissioners of Gadsden county by a sworn answer admitted the facts alleged in the petition. Transcripts from the records of the county commissioners relative to the action taken for the issue of the bonds were filed in evidence. The court found as follows: That on September 16, 1910, the county commissioners adopted a resolution that it is necessary and expedient to erect a new court house in and for Gadsden county; that notice is given that at the regular meeting of the county commissioners for the county on November 7, 1910, the question of erecting a new court house will be acted on by said board of counsel commissioners; that this notice be published once each week for thirty days in the Gadsden County Times. That on November 7, 1910, at a regular meeting the said county commissioners adopted a resolution, as follows:

"Whereas, the present court house in said county is entirely inadequate for the purpose for which it was erected, owing to the natural increase in population. There is a lack of accommodation for the various county officials, absence of proper vaults and storage room for the valuable

records belonging to the county, and quarters are leased at the present time from private parties for the county officials; therefore

BE IT RESOLVED, That the time has arrived in our opinion when a new court house should be erected in Gadsden county, and it is the sense of this board that the cost of said building fully furnished and equipped should not exceed the sum of Sixty Thousand Dollars; therefore

BE IT RESOLVED, That this Board invite architects and contractors to submit sketches of preliminary estimates for such building, that the Board may at its convenience examine same and determine what plan to accept, etc."

That at a regular meeting on April 3, 1911, the county commissioners adopted a resolution "that it is expedient and for the best interest of the county of Gadsden that county bonds be issued by the board of county commissioners of said county for the purpose of erecting a court house in said county.

SECOND, That the amount of bonds required for such purpose is Sixty Thousand ($60,000.00) Dollars, such bonds to be payable in twenty years from the date thereof, and to bear interest at the rate of five (5) per cent per annum, payable annually, both principal and interest to be payable at Quincy, Florida.

THIRD; That notice is hereby given that an election will be held by the legal voters of said county on the 16th day of May, A. D. 1911, at the several places where the last general election was held in said county to determine by the majority of the legal voters of said county voting at such election, whether such bonds shall be issued by said board for said county. The form of the ballot for such election shall be "FOR BONDS," or "AGAINST BONDS," and appointing inspectors and clerks to hold

the election. That "this resolution was published in the several newspapers printed in said county once each week for four consecutive weeks before the day appointed therein for said election and afterwards, on the 16th day of May, A. D. 1911, the day appointed therefore said election was held in pursuance of and in accordance with said resolution, at the several places where the last general election was held in said county, and was conducted and the canvass of the votes certified to and returned in the manner and within the time prescribed by law, and the said returns were delivered to the chairman and clerk of said board of county commissioners.

And afterwards to said county commissioners at a special meeting held at Quincy on the 22nd day of May, A. D. 1911, canvassed the said returns of said election and declared the result thereof and caused the same to be recorded in their minutes in the words and figures following; to-wit:

At a special meeting of the Board of County Commissioners, held at Quincy on the 22nd day of May, A. D. 1911, the following proceedings were had:

The Board then proceeded to publicly canvass the returns of the election held in Gadsden County on the 16th day of May, A. D. 1911, to determine whether or not bonds should be issued for said county for the erection of a court house, and after canvassing such returns the Board declared the result of said election to be as follows, to-wit:

The total number of votes cast at said elections was four hundred and five (405), of which number two hundred and seventy-nine (279) votes were cast for bonds, and one hundred and twenty-six (126) were cast against

bonds, and that there was a majority of one hundred and fifty-three (153) votes cast at said election for bonds.

THEREUPON the members of said Board made and signed the following certificate of the returns of said election.

We, the undersigned County Commissioners of Gadsden County, Florida, do hereby certify that at a special meeting of said Board, held at Quincy, Florida, May 22nd, A. D. 1911, we proceeded publicly to canvass the returns of an election duly called and held in Gadsden county, Florida, on the 16th day of May, A. D. 1911, to determine whether or not bonds should be issued by said county for the erection of a court house for said county, and that said returns so canvassed as aforesaid show there were cast at said election a total of four hundred and five (405) votes and that there were cast for bonds two hundred and seventy-nine (279) votes, and that there were cast against bonds one hundred and twenty-six (126) votes.

WE FURTHER CERTIFY, That there was a majority of one hundred and fifty-three (153) votes cast for bonds at said election so held as aforesaid." That at a regular meeting of the board of county commissioners on October 2, 1911, the following resolutions were adopted:

"Whereas, It is considered expedient for the best interest for the county of Gadsden that bonds to the amount of Fifty-five thousand ($55,000.00) Dollars be issued by the Board of County Commissioners for said County of Gadsden, said bonds to be payable in twenty (20) years from the date thereof, and to bear interest at the rate of five (5) per cent. per annum payable annually, both principal and interest to be payable at Quincy, Florida; therefore

BE IT RESOLVED, That the County Commissioners

40—Vol. 63.

for Gadsden County for said period of time be necessary for the purpose levy annually a tax upon the taxable property, both real and personal in said county of Gads- den to pay the interest upon said bonds amounting to the sum of Two Thousand Seven Hundred and Fifty Dol- lars, said interest to be payable on the First day of July of each year, beginning in the year 1913, and also a sum sufficient to raise the amount annually required as a sink- ing fund to meet the principal of said bonds, when the same mature amounting to the sum of two thousand seven hundred and fifty dollars, annually, the proceeds arising from said levy to be paid over by the Tax Col- lector to the Trustee of the County bonds to be approved by the Board of County Commissioners, as required by law, and to be used for the purpose of paying the principal and interest of said bonds when and as the same shall ma- ture and become payable. The first levy of said tax to be made in the year 1912.

WHEREAS, An election held by the legal voters of Gadsden County, Florida, on the 16th day of May, A. D. 1911, the Board of County Commissioners of the county of Gadsden, State of Florida, were authorized to issue bonds for said county of Gadsden to the amount of Sixty Thousand Dollars ($60,000.00), payable in twenty years from the date thereof, to bear interest at the rate of five per cent per annum, payable annually, both principal and interest to be payable at Quincy, Florida, for the purpose of erecting a court house in said county, and,

WHEREAS, the necessity for erecting such court house is urgent and pressing; therefore

BE IT RESOLVED, That such bonds to the amount of fifty-five thousand dollars ($55,000.00) be offered for sale and that the Clerk of this board be, and he is hereby authorized and directed to have the following notice pub-

lished in the Gadsden County Times for five successive issues, beginning October 6th, 1911, viz:

NOTICE IS HEREBY GIVEN that the County Commissioners of the county of Gadsden, State of Florida, will receive bids at the office of the Clerk of the Circuit Court for Gadsden County, Florida, on or before the 6th day of November, A. D. 1911, for the purchase of the whole or any part of the issue of bonds of said county at the par value of fifty-five thousand dollars (\$55,000.00), bearing interest at the rate of five per cent per annum, payable annually on the 1st day of July of each successive year, beginning in the year 1913, until all of said bonds shall have been paid and redeemed. The principal of said bonds to be due and payable in Twenty years from the date of the issuance thereof, both principal and interest to be payable at Quincy, Florida. All bids for such bonds shall specify the amount of bonds bid for, the denomination required, and the time the bidder will comply with his bid, and shall also specify whether the bid is in current money or evidence of indebtedness against the said county. Each bid shall be accompanied by a certified check of five per cent of the amount thereof, payable to the order of A. S. Woodbery, County Treasurer, to be returned in the event such bid is rejected and to be forfeited by any bidder whose bid is accepted, and who shall fail to comply with the terms of his bid.

The right to reject any and all bids for said bonds is hereby reserved.

The court finds as a matter of law that Chapter 5698, Acts of 1907, authorizes County Commissioners to levy a building tax not exceeding five mills per annum for five years in lieu of all other county building tax to erect court houses and repeals all laws in conflict therewith.

It is evident that so much of Sections 769, 786, 787,

791 and 798 of the General Statutes as authorizes the County Commissioners to issue bonds for the purpose of erecting a court house, and to levy taxes over 5 mills per annum or for a period of over five years to pay the interest thereon, and provide a sinking fund for the ultimate payment of the bonds is in conflict with Chapter 5698, Laws of 1907, and is thereby repealed pro tanto." ———————— "Therefore it is ordered, adjudged and decreed that the prayer of the petition of the State of Florida, be and the same is hereby denied and said suit dismissed at the costs of the county of Gadsden of the State of Florida to be taxed by the Clerk of this Court."

On an appeal taken by the State the questions presented here for determination are whether the appeal is properly taken, and whether Chapter 5698, Acts of 1907, repealed sections 769, 786, 787, 791 and 798 of the General Statutes of 1906, in so far as such sections authorize the county commissioners to issue bonds for the purpose of erecting a court house for the county.

Chapter 6237, Acts of 1911, requires the proceedings thereunder to be instituted in the name of the State of Florida, and by necessary implication the State may prosecute appropriate appellate proceedings to review the decree required by the act to be rendered by the Circuit Court. The constitution provides in section 5, Article V, that "the Supreme Court shall have appellate jurisdiction in all cases at law or in equity originating in Circuit Courts." This case originated in the Circuit Court, therefore the Supreme Court has appellate jursdiction of it, by appropriate procedure. Section 3 of Chapter 6237 provides that "any citizen of the State of Florida, resident in such county ———————— so desiring to issue ———————— bonds, may become a party to said proceedings, and if dissatisfied with the decree of the

court confirming or validating the issuance of the bonds, may except thereto within twenty (20) days from the decree and take an appeal to the Supreme Court, as in other chancery cases." This does not exclude the right of parties to the proceedings to proper appellate process and relief and the provision clearly indicates that the process of appellate review shall be by appeal as in chancery cases, and not by writ of error as in ordinary actions at law. An appeal by the State is authorized and the question of substantive law presented will be considered.

While statutes may be impliedly as well as expressly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent. An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable repugnancy between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute. If the two may operate upon the same subject without positive inconsistency or repugnancy in their practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears. Wood v. United States, 16 Peters 342; Florida E. C. R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272; 99 Am. St. Rep. 114; State ex rel. Loftin v. McMillan, 55 Fla. 246, 45 South. Rep. 882; 36 Cyc. 1023 *et seq.;* Howard v. Hulbert, 63 Kan. 793, 66 Pac. Rep. 1041, 88 Am. St. Rep. 267.

Sections 769, 786, 787 and 798 of the General Statutes of 1906, relate to the issue of county bonds for the purpose of erecting a court house for the county, while Chapter

5698, Acts of 1907, provides for the levy of an annul tax by the county for the purpose of erecting a court house. The two provide the means for erecting a court house, and while they are entirely different, there appears to be no intent that the act of 1907 shall be exclusive and the latter act is not repugnant to the prior statutes, and both can be given effect without inconsistency or repugnant consequences. The county commissioners of each county have a choice between the two methods of raising money for erecting a court house in the county.

Chapter 5698 is an amendment to section 808, Gen. Stats. of 1906. Chapter 3421, Acts of 1883, and the provision therein that the tax levy there authorized is "in lieu of all other county building tax" was in the original statute. It applies to current tax levies for county buildings and does not relate to tax levies to pay the principal or interest on bonds lawfully issued for the purpose of building a court house under other provisions of law.

It is not apparent that Chapter 6273, Acts of 1911, which purports to validate the action taken by the county commissioners for the issue of these bonds is not effective for the purpose designed.

The decree appealed from is reversed and a decree validating the bonds as required by the statute will be entered by the Circuit Judge.

TAYLOR, SHACKLEFORD and HOCKER, J. J., concur.

COCKRELL, J., disssenting, is of the opinion that no appeal lies in behalf of the State.