**STATE TAX COMMISSION et al. v. KENNECOTT COPPER CORPORATION.**

**SAME v. SILVER KING COALITION MINES CO.**

Nos. 3131, 3132.

Circuit Court of Appeals, Tenth Circuit.

July 23, 1945.

Writ of Certiorari Granted Nov. 5, 1945.

See 66 S.Ct. 142.

906

Arthur H. Nielsen, Asst. Atty. Gen. (Grover A. Giles, Atty. Gen., and W. L. Skanchy, State Tax Commission Atty., of Salt Lake City, Utah, on the brief), for appellants.

C. C. Parsons, of Salt Lake City, Utah (Wm. M. McCrea and A. D. Moffat, both of Salt Lake City, Utah, for Kennecott Copper Corporation, and R. J. Hogan, of Salt Lake City, Utah, for Silver King Coalition Mines Co., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

These were two separate actions, one instituted by Kennecott Copper Corporation and the other by Silver King Coalition Mines Company, against the State Tax Commission of Utah and the individuals constituting the Commission. The actions were brought in the United States District Court for the District of Utah to recover alleged illegal taxes paid under protest. Both plaintiffs prevailed and the Commission has appealed. While separate appeals were perfected, the cases present identical questions. They were briefed and argued together and will be so treated in this opinion. On account of the conclusion we have reached on the jurisdictional question, it will not be necessary to discuss or consider in detail the nature or character of the taxes in question.

Appellant urges that these suits were actions against the State of Utah and that Utah has not waived its immunity from suit in the federal courts under the Eleventh Amendment to the United States Constitution.

We think the position that these actions are suits against the State is well taken. The suits were filed against the State Tax Commission and against the members of the Tax Commission as individuals. Whether a suit is one against a state is not to be determined alone from the mold in which the pleadings are cast. The names of the titular parties do not determine the question. If the impact of the judgment is felt by the state, then it is in fact the real party in interest. It has been held that a suit against an officer of a state for a money judgment which the state was required to satisfy was a suit against the state. See Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057.

Utah has comprehensive statutes dealing with the assessment and collection of taxes and with the right of taxpayers to challenge the collection of taxes claimed to be illegal for any reason.[1] These statutes provide for the assessment of mines by the State Tax Commission, and require the Commission to keep records of assessments of mines. They provide for notice of assessments, opportunity for hearings before the Commission and correction of assessments, and for application to the Supreme Court by writ of certiorari for review of the decisions of the Commission. Section 80—5—76 provides that no court other than the Supreme Court shall have jurisdiction to review, alter or annul a decision of the Commission. Section 80—11—13 provides that any tax paid under protest shall not be covered into the general fund but shall be held and retained by the State Treasurer until the time for filing an action for its recovery shall have expired, and if such an action is filed, until it has been finally determined, and that if the tax is determined to be illegal, the officer collecting the tax shall approve a claim for the same and the State Treasurer shall then repay the same, together with costs and interest, from any unappropriated funds in the hands of the Treasurer, or in case it is necessary, a deficit shall be authorized.

From the above general view of the Utah Statutes, it is clearly apparent that Utah is the real defendant in these suits. The funds are in its possession as escrow holder. If the judgments which the appellees recovered stand, the State Treasurer, who had nothing to do with the collection of

---

[1] See Title 80, Revenue & Taxation, Utah Code Ann., 1943.

the taxes, is by law required to repay them from funds which he holds for that purpose. Appellees recognized that these were proceedings against the State to recover funds held by it in escrow, and not suits against the individual members of the Tax Commission to recover a personal judgment on account of their wrongful acts when they filed their petitions. Their petitions alleged that they paid the tax under protest and demanded that the Commission make the records required in such cases, and that the money had not been covered into the general fund of the state but was being retained as by law required until it was finally determined whether the tax had been unlawfully collected. If these were suits against the individual members of the Commission for a personal judgment, these allegations would be surplusage and immaterial to the issue.

Utah has waived its immunity from suit and has consented to be sued in actions for the recovery of taxes, which it is claimed have been illegally exacted. But has it also consented to be sued in the federal court?

█ The pertinent part of Section 80—5—76 Utah Code, Annotated, 1943, from which this question must be answered, provides that: "Any taxpayer may pay his occupation tax under protest and thereafter bring an action in any court of competent jurisdiction for the return thereof as provided by section 80—11—11." It is argued that the phrase "any court of competent jurisdiction" has generally been construed to include federal courts where jurisdictional facts are present, and that there is nothing in the context of the statute to indicate that Utah did not intend to embrace a federal court in its waiver of immunity from suit. The question here is in what sense did Utah use this phrase when it waived its immunity from suit? It had two immunities—it was absolutely immune from suit, and in addition thereto was also immune from suit in federal courts. Waiving its immunity from suit for the recovery of illegal taxes did not confer jurisdiction on federal courts to entertain such actions unless the State in addition expressly consented that such a suit might be brought in the federal courts. Blackburn v. Portland Gold Mining Co., 175 U.S. 571, 20 S.Ct. 222, 44 L.Ed. 276, and kindred cases, upon which appellees rely, are not in point on this question. In the Blackburn case the Supreme Court considered a federal statute which required one claiming an adverse interest in a mining claim to institute an action within a specified time to establish the same in any court of competent jurisdiction. The action in that case was filed in the state court, and it was contended that such court was without jurisdiction. The Supreme Court merely held that what the statute did was to require a claimant to bring an action and that it evidenced no Congressional intent to restrict the right which the litigant had sans the statute to choose the forum in which he would bring the action. Without the statute an action to quiet title could have been instituted in the state court or in the federal court if jurisdictional requirements were present. The Supreme Court merely said that Congress did not by the passage of this Act intend to bar any of the doors through which a litigant might go in bringing such an action.

█ In our opinion it is not sufficient to say that there is nothing in the context of the statute to indicate that Utah did not intend to embrace the federal court in its waiver of immunity from suit. Before it can be sued in such courts, the statute must use language which evidences a clear intent to submit to the jurisdiction of federal courts. We think the rule which must guide us in interpreting this language is laid down in Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 877, 88 L.Ed. 1121, where the Supreme Court said:

"When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the Federal courts to be astute to read the consent to embrace Federal as well as state courts. * * * when we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."

This language was repeated in substance in Ford Motor Company v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 349. Both of these cases construed statutes very similar to the Utah statute and in both instances the Supreme Court held that the waiver of those statutes from immunity to suit did not constitute a waiver of the additional immunity from such suit in federal court. The statutes, while not identical with the Utah statute, are very similar,

and we think the decisions in these two cases control the question here.

The statute of Indiana which was considered by the Supreme Court in the Ford Motor Company case, authorized "action or suit against the department in any court of competent jurisdiction; and the circuit or superior court of the county in which the taxpayer resides or is located shall have original jurisdiction * * *." Burns' Ann.St.Ind. § 64-2614(a). Significance is claimed for the language which refers to the Circuit Court or Superior Court of the county in which the taxpayer resides. No comparable language is found in the Utah statute. But the Oklahoma statute, like the Utah statute, contains no language similar to that in the Indiana statute. The Oklahoma statute provides for suit "in the Court having jurisdiction thereof." 68 O.S.A. § 15.50.

■ In considering whether Utah intended to consent to suit only in the state court or whether it intended to waive its further immunity from suit in the federal court, it is not sufficient to merely consider the provision of Section 80—5—76 which authorizes suit in "any court of competent jurisdiction." We must look to the entire plan of tax levy and collection. When so viewed, we think it is clear that Utah contemplates that proceedings for the levy, collection and resistance of taxes which it is claimed are illegally levied, shall be carried on within the framework of the state's government, including its courts. As pointed out, Utah has a comprehensive statute providing for the levy and collection of taxes, including the right of a taxpayer to challenge the tax. The occupation taxes in question here are levied by the State Tax Commission. There are provisions in the statute for notice of assessment, opportunity for protest, and hearings before the Commission, and for appeal to the Supreme Court of the state. Section 80—5—76 which gives the right to sue in any court of competent jurisdiction for the recovery of this particular tax provides that no court in the state except the Supreme Court has jurisdiction to review, alter or annul any decision of the Tax Commission or to suspend or delay the operation thereof. Without analyzing these statutes in minute detail, it is our conclusion that they contemplate a tax process

and proceeding within the state framework and that the right of suit given by Section 80—5—76 was limited to suit in the state court.

In any event, there is in our opinion no such clear declaration in the statute of the intention of Utah to submit to suit in the federal courts as would in the absence of a decision to that effect by the Supreme Court of Utah justify us in giving the statute such a broad interpretation.

It is urged that the statutes of Utah manifest a state policy of permitting claims against the state to be prosecuted in federal courts. We think an analysis of these statutes leads to a contrary conclusion. Section 80—11—11 which confers the right upon any taxpayer to sue for the recovery of illegal taxes was enacted in 1896 in substantially its present form. Prior to 1933 it did not include the right to sue the state. In 1933 it was amended by adding the words "state * * * or other taxing unit." At all times it used the phrase "in any court of competent jurisdiction." The section in question, 80—5—76, was passed in 1937. Again the Legislature used the phrase "in any court of competent jurisdiction." But in 1939, when a statute was passed consenting that suits in certain classes of cases might be brought against the state, the language employed was that suit might be filed "in any court of this state or of the United States."[2] It would seem reasonable to assume that if by the use of the language in question throughout the years, including the Act of 1937, the state had meant and intended to confer jurisdiction upon federal courts to entertain such suits, it would have again employed the same language in the Act of 1939. But in that statute the state expressly named the federal courts.

Finally, it is contended that Utah by administrative interpretation and conduct has firmly established the right of litigants to use the federal courts in actions against the state for the recovery of taxes. A number of cases are cited to sustain this contention. All of them are cases in which the county rather than the state was the party litigant. No case in which the state was a party to a suit in federal court without its consent is cited, nor has any been found. Counties or subdivisions lesser than the state are not immune from suit

_____

[2] Utah Code Ann., 1943, Sec. 104—3—27.

in the federal court under the Eleventh Amendment. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766.

The judgments are severally reversed, and the causes are remanded, with directions to dismiss the actions without prejudice to the filing of an action in proper courts of the State.

PHILLIPS, Circuit Judge (dissenting).

Section 80—5—66, Utah Code Ann.1943, imposes an occupation tax on every person engaged in the business of mining or producing valuable metalliferous ore "equal to one per cent of the gross amount received for or the gross value of metalliferous ore sold." Section 80—5—81, Utah Code Ann.1943, provides that all such taxes shall be paid to the State Tax Commission and by it paid over to the state treasurer. Section 80—5—76, Utah Code Ann.1943, provides that "any taxpayer may pay his occupation tax under protest and thereafter bring an action in any court of competent jurisdiction for the return thereof as provided by section 80—11—11, Revised Statutes of Utah, 1933."[1] Section 80—11—11, supra, provides that where a party, whose property is taxed, or from whom a tax is demanded or enforced, deems such tax unlawful, he may pay the same under protest to the officers designated and authorized by law to collect the same, and thereupon "may bring an action in any court of competent jurisdiction against the officer to whom said tax * * * was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax."

Section 80—11—13, Utah Code Ann.1943, provides that where a tax is paid to the state under protest, it "shall not be covered into the general fund but shall be held and retained by the state treasurer * * * until the time for the filing of an action for the recovery" of such tax, "and in case an action has been filed, until it shall have been finally determined that" such "tax * * * * was lawfully or unlawfully collected"; that in case it shall be determined that such tax was unlawfully collected the officer collecting the same shall forthwith approve a claim for the amount of the tax adjudged to have been unlawfully collected, together with costs and interest, and that any amount in excess of the tax required to pay such claim, including interest and costs, shall be repaid out of any unappropriated funds in the hands of the state treasurer.

The word "any" is equivalent to, and has the force of, every or each one of all.[2] It is all-comprehensive and, unless limited by the context, includes all persons and things referred to indiscriminately.[3]

Where not limited by the context, the phrase "any court of competent jurisdiction" includes a federal court, as well as a state court, where facts requisite to federal jurisdiction are present.[4]

[1] § 80—11—11, Utah Code Ann. 1943.

[2] Hopkins v. Sanders, 172 Mich. 227, 137 N.W. 709, 713; Roedler v. Vandalia Bus Lines, Inc., 281 Ill.App. 520, 523; Heyler v. City of Watertown, 16 S.D. 25, 91 N.W. 334; People v. Van Cleave, 187 Ill. 125, 58 N.E. 422, 425; Bouvier's Law Dictionary, Unabridged, Rawle's 3d Rev., Vol. 1, p. 205.

[3] Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 13 N.W.2d 757, 763.

See, also, Stout v. Simpson, 34 Okl. 129, 124 P. 754, 756.

[4] See Blackburn v. Portland Gold Mining Co., 175 U.S. 571, 20 S.Ct. 222, 225, 44 L.Ed. 276; Shoshone Mining Co. v. Rutter, 177 U.S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864; and Chambers v. Harrington, 111 U.S. 350, 4 S.Ct. 428, 28 L.Ed. 452, construing the phrase "a court of competent jurisdiction" embraced in § 2326, Rev.Stat., 30 U.S.C.A. § 30, providing for what is known in the mining regions as an "adverse suit"; Regan v. Kroger Grocery & Baking Co., 386 Ill. 284, 54 N.E.2d 210; and Miller v. Municipal Court of City of Los Angeles, 22 Cal.2d 818, 142 P.2d 297, 308, construing the phrase "in any court of competent jurisdiction" in § 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 925(e); Stringer v. Griffin Grocery Co., Tex. Civ.App., 149 S.W.2d 158, 160; Booth v. Montgomery Ward & Co., Inc., D. C.Neb., 44 F.Supp. 451; Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F. 2d 3, 149 A.L.R. 271; Hargrave v. Mid-Continent Petroleum Corp., D.C.Okl., 36 F.Supp. 233; and Wingate v. General Auto Parts Co., D.C.Mo., 40 F.Supp. 364, construing the phrase "any court of competent jurisdiction" in § 16 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b), which provides for suits by employees to recover liability of employer for violating §§ 6 and 7 of such Act, 29 U.S.C.A. §§ 206, 207;

In re Chicago & E. I. Ry. Co., 7 Cir., 121 F.2d 785, construing § 77, sub. j,

In Shoshone Mining Co. v. Rutter, 177 U.S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864, the court said:

"When in § 2326, Rev.Stat. [30 U.S.C.A. § 30], Congress authorized that which is familiarly known in the mining regions as an 'adverse suit,' it simply declared that the adverse claimant should commence proceedings 'in a court of competent jurisdiction.' It did not in express language prescribe either a Federal or a state court, and did not provide for exclusive or concurrent jurisdiction. If it had intended that the jurisdiction should be vested only in the Federal courts, it would undoubtedly have said so. If it had intended that any new rule of demarcation between the jurisdiction of the Federal and state courts should apply, it would likewise undoubtedly have said so."

There is nothing in the Utah statutes indicating an intention on the part of the legislature that the phrase "any court of competent jurisdiction" should not embrace federal courts. In that respect, the instant case is distinguishable from Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 880, 88 L.Ed. 1121. The Read case was a suit to recover taxes paid under protest brought under 68 O.S.1941 § 15.50. The statute in that case provides that "All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein," and directs the form of judgment that shall be entered. Clearly, the Oklahoma legislature could not direct a federal court to give precedence to suits brought therein for the recovery of taxes. Nor could it direct the manner and method of entering judgment in a federal court. In the Read case, the Supreme Court said:

"Furthermore, section 12665 gives directions to the Oklahoma officer as to his obligations, requires the court to give precedence to these cases and directs the kind of judgment to be returned, see note 1, supra, which is quite different in language, if not in effect, from the judgment a Federal court would render. It is clear to us that the legislature of Oklahoma was consenting to suit in its own courts only."

Moreover, it is the public policy of Utah to permit suits against the state, to which the state has consented, to be brought both in the state and federal courts. Section 104—3—27, Utah Code Ann.1943, originally enacted in 1939, in part provides:

" * * * the consent of the state of Utah is given to be named a party in any suit which is now pending or which may hereafter be brought in any court of this state or of the United States for the recovery of any property real or personal or for the possession thereof or to quiet title thereto, or to foreclose mortgages or other liens thereon or to determine any adverse claim thereon, or secure an adjudication touching any mortgage or other lien the state of Utah may have or claim on the property involved. * * *"

In this respect, the instant case is distinguishable from Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347. That, too, was a case to recover taxes paid under protest under § 64-2614(a) of Burns, Indiana Stat.Ann.1943 Replacement. That section, in part, provides:

"* * * Any person improperly charged with any tax provided for under the terms of this act, and required to pay the same, may recover any amount thus improperly collected, together with interest, in any proper action or suit against the department in any court of competent jurisdiction; and the circuit or superior court of the county in which the taxpayer resides or is located shall have original jurisdiction of action to recover any amount improperly collected. * * *"

Section 4-1501, Burns, Indiana Stat.Ann. 1933, provides that any person or persons having a claim against the state, arising at law or in equity, out of a contract, express or implied, may bring suit therefor against the state in the superior court of Marion County, Indiana, and that jurisdiction is vested upon such court to hear and determine such action. Indiana thereby manifests a state policy to permit claims against the state to be prosecuted only in her own courts.

Furthermore, the Supreme Court of the United States stated that the provision in the Indiana statute which vests original jurisdiction in the "circuit or superior court of the county in which the taxpayer resides

---

of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. j, which provides that suits or claims for damages caused by the operation of trains, busses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction.

or is located" indicates that the state legislature contemplated suit in the state courts.

In the instant case, neither the context of the statute nor the public policy of the state of Utah indicates that the phrase "in any court of competent jurisdiction" should be restricted to state courts.

For the reasons indicated, I respectfully dissent.